UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

# **SEALED DOCUMENT**

CIVIL ACTION NO. 12-11580-RGS

CARL ERICKSON-BEY, Relator

v.

UNNAMED DEFENDANTS.

MEMORANDUM AND ORDER
August 23, 2012

STEARNS, D.J.

BACKGROUND

On August 21, 2012, plaintiff/Relator Carl Erickson-Bey (Erickson), a resident of Miami, Florida, filed a purported *qui tam* Complaint which he claims originally was e-mailed to the United States Department of Justice ("DOJ") on July 26, 2012. The documents appear to have been directed to the DOJ's Office in this Courthouse; however, the District Court Clerk's Office received the filings and opened the action on the court's dockets as a sealed *qui tam* action. In general, Erickson seeks to challenge the mortgage foreclosure procedures in Massachusetts. He also challenges the actions by banks, mortgagees and their attorneys, and others, in implementing those foreclosure proceedings.

Specifically, Erickson seeks to have the DOJ begin a special investigation. He claims that in Massachusetts, mortgage foreclosures are filed in the Massachusetts Land Court (MLC). He contends that the MLC "Complaint to Foreclose Mortgage" standard form used by foreclosure attorneys to institute a foreclosure action contains two sides; however, the only portion of the Complaint served upon a defendant is the front page. Erickson claims the reverse side of the form

provides an area for additional claims/counts. He contends that a foreclosure defendant is unable to review the reverse side of the Complaint, because the MLC's public files do not include the reverse side of the form; only the front side is maintained. Thus, he contends it is impossible for a defendant in a mortgage foreclosure case to determine the true nature of the allegations, unless the defendant requests the information from the mortgagees' foreclosure attorney. He further contends that MLC staff, the mortgagee, and its counsel are fully aware of the non-disclosure.[1] Because of this, he contends a Judgment of Foreclosure is obtained without the defendant having adequate notice, in violation of the foreclosure defendant's due process rights. He contends that all mortgagees, their attorneys, the MLC, and the Commonwealth of Massachusetts have conspired to irreparably harm foreclosure defendants. He asserts that a *qui tam* action would eliminate the "falsely created and grossly overcharged false claims of losses to the United States Government that do not exist." Compl. at ¶ 10. He further states that: "Qui-Tam provides enumeration for myself, my family, as well as the United States Government, and could result in a remedy for property owners deprived of their right to due process and property." *Id.*

Attached to the Complaint is another document also addressed to the DOJ in this Courthouse. That appears to be the original *qui tam* claim e-mailed to the DOJ on July 26, 2012, which differs slightly than the *Qui Tam* Complaint described above. In that document, Erickson states that from 1994 to 2000, and again in 2010, he has had interactions with parties in foreclosure cases in the MLC while he was defending his own foreclosure cases (he references three foreclosures). He

---

[1] Apparently, Erickson argues that the reverse side of the form reveals certain defenses that could be raised by the foreclosure defendant if he/she were apprised of these defenses, which include, *inter alia*, a bank's breach of contract, fraudulent assignments, violations of RESPA, violations of the FDCPA.

indicates that he discovered that the foreclosure Complaints were not signed by the plaintiff, and questions whether an unsigned Complaint can constitute a valid action. He claims that in his 2010 foreclosure case he discovered the alleged concealment and misrepresentations involved in MLC foreclosures. He contends that a majority of banks engaged in fraud on the foreclosure defendants, by using the standard foreclosure forms. He again argues that banks, attorneys, and the MLC conspired to deploy tactics as part of a scheme to defraud property owners by intentionally omitting critical factual allegations in order to foreclose on mortgages, in violation of their due process rights. Further, he claims that this results in false claims by the lender for its alleged losses, which, in turn, deprive the United States of billions of dollars.

DISCUSSION

    I.    The Filing Fee

Erickson has not paid the $350.00 filing fee applicable to this action, *see* 28 U.S.C. § 1914(a) ($350.00 filing fee for all non-habeas civil actions), or filed a motion for leave to proceed without prepayment of the filing fee, *see* 28 U.S.C. § 1915 (proceedings *in forma pauperis*).[2]

Accordingly, Erickson must either (1) pay the $350.00 filing fee; or (2) move for leave to proceed without prepayment of the filing fee. Failure of Erickson to comply with this directive within 21 days of the date of this Procedural Order will result in the dismissal of this action.

If Erickson elects to seek *in forma pauperis* status, he must submit an affidavit that includes a statement of all of his income and assets. *See* 28 U.S.C. § 1915(a)(1). For the convenience of

---

[2]*Qui tam* actions are considered to be non-habeas civil actions and carry a filing fee notwithstanding that the relator is suing on behalf of the United States. *See* Chapter Four, District Court Manual, § 4.01(b)(3) (discussing case opening procedures for *qui tam* cases, *citing* 28 U.S.C. § 1914(a)).

litigants, this court provides a form application to seek leave to proceed *in forma pauperis*. The Clerk shall provide Erickson with an Application to Proceed in District Court Without Prepaying Fees or Costs.

    II.    <u>Authority to Screen the Complaint</u>

A district court has inherent authority to dismiss a frivolous or malicious complaint *sua sponte*. *See Mallard v. United States District Court*, 490 U.S. 296, 307-08 (1989) (courts have authority to dismiss a frivolous or malicious lawsuits even in absence of any specific statutory provision); *Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) ("district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources" and district court properly dismissed frivolous case, even in a fee-paying case).[3] A court may also dismiss a complaint on its own motion for failure to state a claim upon which relief may be granted. *See Gaffney v. State Farm Fire and Cas. Co.*, 294 Fed. Appx. 975, 977 (5th Cir. 2008) (unpublished decision). Further, the court has an independent obligation to inquire, *sua sponte*, into its subject matter jurisdiction. *See McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004); Fed. R. Civ. P. 12(h)(3) ("If the court determines ... it lacks subject matter jurisdiction, the court must dismiss the action."). *See also In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988)

---

[3]*See also Bustos v. Chamberlain*, 2009 WL 2782238, *2 (D.S.C. 2009) (noting that the court has inherent authority "to ensure a plaintiff has standing, that subject matter jurisdiction exists, and that a case is not frivolous") *citing, inter alia, Mallard*, 490 U.S. at 307-308; *Pillay v. INS*, 45 F.3d 14, 16-17 (2d Cir. 1995) (where a § 1915 screening was not applicable because a *pro se* party paid the filing fee, the Court still had inherent authority "wholly aside from any statutory warrant" to act *sua sponte*); and *Rolle v. Berkowitz*, 2004 WL 287678, *1 (S.D.N.Y. 2004) (*sua sponte* dismissal in fee-paying *pro se* case is warranted where the claims presented no arguably meritorious issue to consider).

4

("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting.").

For purposes of preliminary screening, this court liberally construes the Complaint because Erickson has filed this action *pro se*. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Instituto de Educacion Universal Corp. v. U.S. Dept. of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Nevertheless, this action is subject to dismissal for the reasons set forth below.

### III. Failure to Comply With Fed. R. Civ. P. 8

As an initial matter, Erickson's Complaint materially fails to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8 provides, in relevant part, that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed. R. Civ. P. 8(a)(2). The statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Phelps v. Local 0222*, 2010 WL 3342031, at *5 (D. Mass. 2010) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quotations and citations omitted)). In addition, the pleadings "must afford the defendants a meaningful opportunity to mount a defense." *Benyamin v. Commonwealth Med. UMass Med. Ctr., Inc.*, 2011 WL 2681195, at *2, (D. Mass. 2011) (quoting *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal punctuation and additional citations omitted)). At a minimum, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Id. (quotation omitted). While the "First Circuit holds a *pro se* litigant to a standard of pleading less stringent than that for lawyers," "this cannot be taken to mean that *pro se* complaints are held to no standard at all." *Green v. Massachusetts*, 108 F.R.D. 217, 218

(D. Mass. 1985). Thus, "the requirements of Rule 8(a)(2) are minimal – but minimal requirements are not tantamount to nonexistent requirements." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004) (internal quotation omitted).

In order to comply with Rule 8, a plaintiff must plead more than a mere allegation that the defendant has harmed him [or her]. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See Chiang v. Skeirik*, 582 F.3d 238, 244 (1st Cir. 2009) ("'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice' [citing *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009)]) (brackets added, other citations omitted).

Here, although Erickson does not assert expressly that his claim is one under the False Claim Act, this Court will presume this is the case.[4] Nevertheless, Erickson's Complaint does not comport with the pleading requirements of Rule 8because it is not entirely intelligible and it fails to set forth the companies (e.g., banks, mortgagees), attorneys, or other persons who are the defendants in this *qui tam* action who are alleged to have engaged in making false claims to the United States. Moreover, his claim of a vast conspiracy among unnamed MLC staff, banks, mortgagees, and their attorneys are legal conclusions without any underlying factual support.

---

[4]The False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733 (2006), provides for treble damages and civil penalties on persons or entities who knowingly submit false or fraudulent claims to the United States. Under the False Claims Act, private parties (relators) are authorized to bring an action on behalf of the government when the relator possesses information that the target of the suit has submitted a false or fraudulent claim. *See id.* § 3730(b). If a *qui tam* suit is successful, the relator may be entitled to monetary reward reflecting a specified percentage of any settlement or judgment. *See id.* § 3730(d). *See also Capelouto v. United States*, 99 Fed. Cl. 682 (Fed. Cl. 2011).

In light of this, the action is subject to dismissal; however, this court need not give Erickson an opportunity to cure the pleading deficiencies, because there is a fundamental problem that must first be resolved before this case can proceed.

III.     Erickson May Not Proceed With This *Qui Tam* Action *Pro Se*

As a general matter, although 28 U.S.C. § 1964 permits a person to proceed *pro se* with respect to his/her own claims, the *pro se* litigant may not represent the interest of others in federal court. *See Feliciano v. DuBois*, 846 F. Supp. 1033, 1039 (D. Mass. 1994); *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991). Additionally, this court's Local Rules do not provide such authorization. *See* District of Massachusetts Local Rule 83.5.3©, providing that "[a] person who is not a member of the bar of this court, and to whom sections (a) and (b) are not applicable, will be allowed to appear and practice before the court only in his own behalf." *Id.*

Specifically, with respect to *qui tam* actions, it is well-settled that <u>*pro se* litigants are not permitted to represent the interests of the United States</u>, notwithstanding that the relator (the *pro se* litigant) has a monetary stake in the lawsuit. *See U.S. ex rel. Szymczak v. Covenant Healthcare Systems, Inc.*, 207 Fed. Appx. 731 (7th Cir. 2006) (unpublished decision holding *pro se* relator cannot prosecute claims under the FCA and agreeing with its earlier decision in *United States ex rel. Lu v. Ou*, 368 F.3d 773, 775 (7th Cir. 2004) (disagreement on other grounds), stating that the policy against non-lawyers representing corporations, shareholders, or other individuals is applicable to *qui tam* actions.).[5] In *Szymczak*, the United States Court of Appeals for the Seventh Circuit ("Seventh

---

[5]In *U.S. ex rel. Lu*, the Seventh Circuit held that a *pro se* plaintiff cannot bring a *qui tam* action under the FCA, reasoning:

> The relator is not technically the government's lawyer; but the same policy that forbids litigants, whether they are corporations, or other organizations, or

7

Circuit") noted the reason for this rule that a *pro se* plaintiff may not represent the government is "to filter out frivolous litigation that can redound to the harm of the represented party." *Szymczak*, 207 Fed. App. at 731. In *Lu*, the Seventh Circuit, as a matter of first impression, rejected a *pro se qui tam* action stating that Lu was suing not on his own behalf, noting several factors warranting that holding, including, *inter alia*, the filtering out of frivolous litigation, the potential for *res judicata* serving to bind the government in the future, and the belief that a licensed attorney has the character, knowledge, and training for the responsibility of binding the government or waiving its rights. *Lu*, 368 F.3d at 775-76. *Cf. Herrera-Venegas v. Sanchez-Rivera*, 681 F.2d 41, 42 (1st Cir. 1982) ("When that representative is a licensed attorney there are grounds for belief that the representative's character, knowledge and training are equal to the responsibility."). *See also U.S. ex rel. Banks v. Aramark Correctional Services*, 2008 WL 3833459 (W.D. Pa. 2008) (citing cases in the 4th, 8th, 9th, and 11th circuits, as well as cases in the district courts in New York, Illinois, and the District of Columbia, holding that a non-attorney *pro se* litigant may not maintain suit as a *qui tam* relator without the assistance of counsel); *United States v. Onan*, 190 F.2d 1, 6 (8th Cir. 1951) (holding that a lay person cannot represent the United States in an FCA action; "The practice of law is affected with a public interest and an attorney at law as distinguished from a layman, has both

---

      individuals, such as members of a class or shareholders, to be represented by nonlawyers . . . is applicable to qui tam suits. Lu is suing not on his own behalf, but on behalf of the government. Of course his motives may well be purely private-spite against Ou for example, or desire for the monetary reward that the successful relator obtains. But an agent does not become a principal by having a personal incentive to act for him. A rule that limits legal representation (except self-representation) to lawyers operates to filter out frivolous litigation that can redound to the harm of the represented party, especially when as in this case the representative is a volunteer; the government didn't hire Lu to sue on its behalf. "[A] party may be bound, or his rights waived, by his legal representative. . . ."

*U.S. ex rel. Lu*, 368 F.3d at 775-76 (internal citations omitted);

public and private obligations, being sworn to act with all good fidelity toward both his client and the court.")).[6]

While in a *qui tam* relator has the "right to conduct the action," the United States remains "the real party in interest" whether it intervenes or not. *United States ex rel. Zissler v. Regents of Univ. of Minn.*, 154 F.3d 870, 872 (8th Cir. 1998) ("Even in cases where the United States has declined to intervene, the structure of the *qui tam* procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation have been held to weigh heavily for holding that it remains the real party in interest.") (internal quotations and citations omitted). The similarity between the status of relators in *qui tam* actions and that of stockholders and class representatives supports the court's conclusion. Like a stockholder in a stockholder derivative suit and a class member in a class action suit, a lay relator in a *qui tam* action needs qualified legal counsel to ensure that the real party at interest, the United States, is adequately represented. The need for adequate legal representation on behalf of the United States is obvious. As another district court noted in considering this issue: "[a]ny determination in

---

[6]*See Timson v. Sampson,* 518 F.3d 870, 873-74 (11th Cir. 2008) (holding that a *pro se* relator cannot maintain a *qui tam* suit under the FCA); *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1127 (9th Cir. 2007) ("Because the general *pro se* provision, 28 U.S.C. § 1654, does not authorize Stoner to proceed *pro se* on behalf of the government, Stoner must identify an alternate source of authority granting him this privilege. This Stoner has failed to do."); *U.S. ex rel. Brooks v. Lockheed Martin Corp.*, 237 Fed. Appx. 802, 803 (4th Cir. 2007) ("[T]he United States is the real party in interest, and the need for adequate legal representation on behalf of the United States counsels against permitting *pro se* suits."); *Zernik v. U.S. Dept. of Justice*, 630 F. Supp. 2d 24, 27 (D.D.C. 2009) ("[P]ro se plaintiffs are not qualified to represent the interests of the United States in such an action."); *see also Maliani v. Vanderbilt Univ. Med. Ctr.*, 2010 WL 4054268 (M.D. Tenn. 2010); *Carter v. Washtenaw County*, 2010 WL 3222042, at *1 (E.D. Mich. 2010); *U.S. ex rel. Mergent Services v. Flaherty*, 2006 WL 880044, at *3 (S.D.N.Y. 2006); *U.S. ex rel. Lang v. Northwestern University*, 2005 WL 670612, at *1 (N.D. Ill. 2005) (concluding *pro se* litigants may not pursue *qui tam* action on behalf of government, but are not precluded from bringing a personal action under 3730(h) for retaliation).

this case would likely be given res judicata and collateral estoppel effect against future cases." *United States ex rel. Schwartz*, 118 F. Supp.2d 991, 996 (C.D. Cal. 2000). Because the United States is the real party in interest, a judgment obtained by a relator may adversely affect the United States' right to "bring future actions on the same claims asserted here, even if [the United States] obtained new evidence." *Id.* Considering what is at stake for the United States when a relator brings a *qui tam* action, representation by a lay person is inadequate to protect the interest of the United States. *See id.* In this regard, courts that have considered this issue have also focused on the fact that non-lawyers are not subject to the same ethical considerations that govern the conduct of attorneys, and they lack the necessary skills to prosecute complicated *qui tam* claims. *Id.* at 995.

In this court, Chief Judge Wolf has considered the issue whether a *pro se* relator who is not an attorney may pursue *qui tam* claims on behalf of the United States if he is not represented by counsel, and has held that the *pro se* relator is not able to do so. *U.S. ex rel., Barlow v. Bristol-Meyers Squibb Co.,* 2010 WL 3824108, *1 (D. Mass. 2010) *citing* Local Rule 83.5.3(c); *Otero v. Int'l Gen. Elec. Co.*, 966 F.2d 1440 (Table), 1992 WL 144690, at *1 (1st Cir. 1992) (a non-*qui tam* case stating that, while non-lawyer could represent himself *pro se*, he could not represent other plaintiffs); *Timson*, 518 F.3d at 873-74 (holding that *qui tam* relator could not maintain action *pro se*, and noting that this holding is in accordance with all circuits to address the issue); *Stoner*, 502 F.3d at 1127 ("Our conclusion that a *pro se* relator cannot prosecute a *qui tam* action on behalf of the United States is consistent with the decisions of other circuits to have addressed the issue").

Further, in a *qui tam* response to foreclosure proceedings, the court lacks subject matter jurisdiction when the case is brought by a *pro se* litigant. *See Deutsche Bank Nat. Trust Co. v. Holyfield*, 309 Fed. Appx. 331, 333 (11th Cir. 2009) (upholding the District Court's determination

that the Court lacked subject matter jurisdiction over a *qui tam* claim raised by a *pro se* litigant, and stating " [i]f a person brings a *qui tam* claim based on the FCA, and he or she proceeds *pro se*, the district court will lack subject matter jurisdiction over the claim.").

In light of all of the above, Erickson's *qui tam* action will be <u>DISMISSED</u> within 90 days from the date of this Memorandum and Order unless the United States agrees in writing to participate and intervene, through its duly-appointed attorneys, or unless Erickson obtains a duly-licensed attorney who files an appearance on his behalf and also files an Amended *Qui Tam* Complaint curing the Rule 8 pleading deficiencies.

IV. <u>Erickson's Due Process Claims Concerning His Foreclosure Proceedings are Not Cognizable</u>

Although Erickson asserts he is bringing a *qui tam* action, he also raises arguments of due process violations with respect to his own foreclosure proceedings. To the extent that this court construes Erickson's Complaint to assert, in addition to an FCA claim, due process challenges to rulings rendered in the state court with respect to any of his foreclosure proceedings (based on the challenges to the Complaint for Foreclosure form, or the alleged collusion of the state courts to deprive persons of their property), his claims are not set forth sufficiently in accordance with the Rule 8 pleading requirements noted above.[7] In any event, this court lacks jurisdiction to consider those claims, either under the *Rooker-Feldman* doctrine (if the state case has been completed),[8] or

---

[7]Additionally, while not making any determination in this regard, this court notes that some of Erickson's claims may be time-barred, as he complains about foreclosures that apparently took place between 1994 and 2000.

[8]The *Rooker-Feldman* doctrine is a distillation of two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are "inextricably intertwined" with the state court's decision. *See Geiger v. Foley Hoag LLP Retirement*

11

the Abstention doctrine (if the state case still is pending).⁹ Should Erickson seek to raise non-*qui tam* claims, he must do so in a separate action; however, in any new action, he also must demonstrate the subject matter of this court over state foreclosure matters, and must set forth his claims in accordance with Rule 8.

CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff/Relator shall pay the $350.00 filing fee for this action or file a Motion for Leave to Proceed *in forma pauperis* within 21 days from the date of this Memorandum and Order or this action will be dismissed;

---

*Plan*, 521 F.3d 60, 65 (1st Cir. 2008) (a federal district court lacks jurisdiction over a final judgment of a state court). *Johnson v. De Grandy*, 512 U.S. 997, 1005-1006 (1994); *Exxon Mobil Corp. v. Saudi Basic Industries Corp., Inc.*, 544 U.S. 280 (2005) (doctrine applies to cases by state court losers seeking review and rejection of state court judgments rendered prior to commencement of federal suit). The *Rooker-Feldman* doctrine "is jurisdictional, and [it] . . . cannot be ignored." *Maymó-Meléndez v. Álvarez-Ramírez*, 364 F.3d 27, 33 n.7 (1st Cir. 2004) (citations omitted). "[T]he proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." *Davison v. Gov't of Puerto Rico-Puerto Rico Fifefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006).

⁹Under the doctrine of abstention, this court should abstain from exercising jurisdiction to intervene in pending state criminal proceedings. *See In re Justices of Superior Court Dept. of Mass. Trial Court*, 218 F.3d 11, 16 (1st Cir. 2000) ("The federal courts have long recognized the 'fundamental policy against federal interference with state criminal proceedings.'" (quoting *Younger v. Harris*, 401 U.S. 37, 46 (1971))). Under *Younger* and its progeny, the Supreme Court broadened the abstention doctrine to protect principles of federalism and comity by preventing the federal courts from interfering substantially with certain ongoing state judicial proceedings. *Younger,* 401 U.S. at 46; *In re Justices of the Superior Court*, 218 F.3d at 16 (1st Cir. 2000); *S. Boston Allied War Veterans' Council v. Zobel*, 830 F. Supp. 643, 648 (D. Mass. 1993). For an extensive discussion on the origins and application of the *Younger* abstention doctrine, *see Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 41-42 (1st Cir. 2012). Abstention is required when: (1) a state proceeding is pending; (2) the state proceeding involves important state interests; (3) the state proceeding affords an adequate opportunity to raise the federal constitutional issue(s); and (4) the plaintiff in the federal case has not demonstrated bad faith, harassment, or any other unusual circumstances that would call for equitable relief. *S. Boston Allied War Veterans' Council*, 830 F. Supp. at 649. MLC foreclosure proceedings fall within the *Younger* arena.

12

2. This action shall be <u>DISMISSED</u> within 90 days of the date of this Memorandum and Order unless the United States agrees in writing to participate and intervene, through its duly-appointed attorneys, or unless Erickson obtains a duly-licensed attorney who files an appearance on his behalf and also files an Amended *Qui Tam* Complaint curing the Rule 8 pleading deficiencies;

3. The Clerk shall serve a copy of the Complaint and this Memorandum and Order to the United States Attorney General and the United States Attorney for the District of Massachusetts; and

4. The court will not construe this action to present any personal, non-*qui tam* due process claims of the plaintiff/relator in connection with his foreclosure proceedings in the courts of the Commonwealth of Massachusetts.

SO ORDERED.

/s/ Richard G. Stearns
RICHARD G. STEARNS
UNITED STATES DISTRICT JUDGE